**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RONALD JACKSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 1:17-00386-KD-B** |
| | ) | |
| **DOUBLEBACK TRANSPORTATION,** | ) | |
| **Defendant.** | ) | |

**ORDER**

Pro se plaintiff Ronald Jackson has sued his former employer,[1] Doubleback Transportation,

LLC, for various claims regarding workplace discrimination and retaliation he alleges occurred

during his five-month tenure with the company.[2] Jackson has now moved for summary judgment.[3]

Because Jackson's motion does not demonstrate that he is entitled to judgment as a matter of law

on any of his claims, it is due to be denied.

**I.     PROCEDURAL BACKGROUND**

Jackson initiated this action by filing a complaint in August 2017. Over the course of the

next several months, he failed to properly effectuate service, which led to a significant delay. (See

Doc. 8 (explaining that Jackson did not effectuate service on Doubleback despite a seven-month

lapse)). In July, the Court extended the time for service until September 4, 2018. (Doc. 11).

---

[1] The Court is mindful that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted
by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263
(11th Cir. 1998).
[2] Jackson's amended complaint, (Doc. 34), names Evergreen Forest Products in addition to Doubleback
Transportation. However, Jackson did not seek leave prior to naming Evergreen Forest Products as a party.
The deadline to amend pleadings had expired when Jackson filed the amended complaint on February 7,
2019. See (Doc. 27 at 2 (setting Janary 4, 2019 as the deadline for any motions for leave to amend the
pleading or to join other parties)). The order granting Jackson leave to file an amended complaint, (Doc. 33
at 3), did not encompass leave to join additional parties, but rather leave "to address the deficiencies
identified by D[oubleback] in the Rule 12(c) motion and the matters for clarification as listed by the Court."
Because Jackson did not seek leave to join Evergreen Forest Products, it is **DISMISSED** from this action.
[3] The Court converted Jackson's motion for judgment on the pleadings into a motion for summary
judgment. See (Doc. 43).

1

After being served, Doubleback moved for judgment on the pleadings based on Jackson's first complaint. (Doc. 24). The Court denied Doubleback's motion, reasoning that despite the complaint's lack of clarity, Jackson should be afforded "at least one opportunity" to substantively amend his complaint. (Doc. 33 at 3 (citing Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)). Because the Court saw fit to give Jackson leave to amend his first complaint, it denied Doubleback's motion to dismiss and it permitted Jackson to file his amended complaint on or before February 5, 2019. (Id. at 4).

Jackson filed an amended complaint. (Doc. 34). As amended, the complaint alleges the following claims:

a.  Workplace Discrimination on the Basis of Race

b.  Hostile Work Environment on the Basis of Race and in Retaliation

c.  Retaliation

d.  Failure to Adequately Train

See (Doc. 42 at 1 ("The Plaintiff is pursuing claims against Double Back Transportation for hostile work environment, termination/discharge in regards to same or similiar [sic] under Section 1981 and Title Vll and failure to adequately train."); Doc. 34-1 at 7 ("The [n]egative appraisal occu[r]red after protected activity on April 11, 2017, Plaintiff was subjected to adverse activity.")).

Jackson filed a motion for judgment on the pleadings. (Doc. 42). The Court converted his motion into a motion for summary judgment because it implicated factual issues. The Court afforded Jackson time within which to supplement his motion, and entered a briefing schedule for a response to Jackson's motion for summary judgment. (Docs. 43 & 44).

II.    **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In layman's terms, "To succeed [on a motion for summary judgment], the moving party bears the burden of establishing both prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing *either* genuine issues of material fact *or* that the movant is not entitled to judgment as a matter of law." Bell v. U.S., 2003 WL 22697227, at *1 (N.D. Ala. Oct. 8, 2003) (emphasis in original). "[T]he nonmovant can defeat summary judgment by showing either a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law." U.S. Fid. and Guar. Co. v. Slate Sec. Sys., Inc., 2006 WL 8437800, at *1 (N.D. Ala. Jan. 3, 2006).[4]

Jackson, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for his motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof—that a genuine dispute of material fact exists—the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter . . . the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

---

[4] Jackson's pro se status does not relieve him of the burden of carrying his motion. "[A]lthough [courts] are to give liberal construction to the pleadings of pro se litigants, '[courts] nevertheless have required them to conform to procedural rules.'" Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007) (quoting Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002)).

his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992) (internal citations and quotations omitted).

### III.   MATERIAL FACTS[5]

Doubleback hired Jackson as a part-time driver in January 2017.[6] (Doc. 49-1 at 1). During his employment, Jackson worked on an as-needed basis. (Id.). Becky Pilkington, who served during the relevant period as Doubleback's general manager, gave Jackson verbal reprimands. (Id.)

In a span of three days in April, Pilkington received three unrelated complaints about Jackson. (Id.). In response to these complaints, he was given a written reprimand. (Id.; doc. 49-2) The three incidents initially listed on the written reprimand were: (1) 4/11/17: Tailgate left open on a truck; (2) 4/13/17: Jackson took the wrong trailer; and (3) 4/14/17: Anonymous call that Jackson was driving recklessly. (Doc. 49-2). The second incident was stricken from the reprimand. (Id.). The reprimand indicated that any other incidents that required disciplinary action would result in suspension of employment. (Doc. 42-3). Jackson refused to sign the written reprimand—twice. (Doc. 49-1 at 1) According to Pilkington, Jackson's demeanor changed after he received a written reprimand. (Id.) He arrived late, ineffectively communicated, and walked off the job on May 22, following an incident ("the May 22 incident"). (Id.)

The May 22 incident revolved around Jackson's allegations that a truck, Truck 57, was unsafe to drive due to the truck shaking. (Doc. 49-3) According to Pilkington, Jackson claimed that Truck 57 was unsafe because the front shook and its cruise control did not work properly.

---

[5] "[W]hat is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).
[6] In his Reply, Jackson argued that the Pilkington's affidavit is not admissible because it fails to address "the case at hand[,]" (Doc. 51 at 3) and it is hearsay. Id. However, the evidence upon which the Court relied for the purpose of summary judgment could be reduced to admissible evidence at trial. Rule 56 objections are limited to evidence that "cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

(Doc. 49-1 at 2). Jackson had driven Truck 57 on the previous three days, and had not reported any issues with the truck during those days. (Id.)

Pilkington asked Doubleback's Safety Manager, Daron Bolen, to address the problems. (Doc. 49-3 at 1). An inspection revealed that the front tire had uneven tread, which would have caused the shaking. (Id.) The tire was replaced, the truck was test driven, and it was determined to be safe. (Id.) Bolen also determined that the defective cruise control did not render the vehicle inoperable pursuant to the Department of Transportation's requirements. (Id.) Although Jackson was informed that the truck was fixed, he refused to drive it. (Id.)[7] Another driver replaced him, and the replacement driver drove Truck 57 without incident. (Id.)

Jackson did not report for work on May 24, 2017. Jackson called in sick an hour after he was scheduled to arrive. As a result of the incidents described in the written reprimand, subsequent workplace conduct, Jackson walking off the job following the May 22 incident, and his refusal to drive Truck 57, Pilkington determined that Jackson's employment should be terminated. (Doc. 49-1 at 2). Doubleback terminated Jackson in a written letter dated May 24, 2017. (Doc. 49-1 at 10).[8]

Jackson dated an EEOC Charge of Discrimination (EEOC Charge No. 846-2017-21475) as April 23, 2017. (Doc. 42-4 at 1).[9] On his Charge, he checked race as the basis upon which Doubleback discriminated against him. (Id.). The alleged discrimination is based on the receipt of the written reprimand dated April 19, 2017. The EEOC dated this Charge as received on May 23, 2017. (Id.). On June 20, 2017, the EEOC issued a right to sue letter on the first charge of

---

[7] Jackson states in his motion that he was told by another employee that the truck was in danger of catching on fire. However, Jackson's statement as to what another employee stated is inadmissible hearsay. Moreover, Jackson's motion is not sworn, thus the court cannot consider the alleged facts as evidence.
[8] Jackson received the letter on May 26, 2017. (Doc. 42 at 5).
[9] In Jackson's second charge he alleges that he filed his first charge on or about May 23, 2017. (Doc. 16 at 9).

discrimination (EEOC Charge No. 846-2017-21475). (Doc. 42-6).  In the letter, the EEOC notified Jackson that it was unable to conclude that the information obtained established violations of the statutes. (Id.).

Jackson filed a second EEOC Charge that alleged between May 3 and May 24, 2017, Doubleback engaged in retaliation and discrimination against him.  See (Doc. 34-10 (Notice of Charge of Discrimination)) (EEOC Charge No. 425-2017-00656); (Doc. 16 at 9).  On June 29, 2017, the EEOC issued a right to sue letter on this charge.  (Id. at 10).

## IV.   DISCUSSION

Doubleback argues Jackson's motion should be denied because he cannot establish a prima facie case with respect to any of his claims. The Court addresses each claim in turn.

### a.   Workplace Discrimination on the Basis of Race

Jackson alleges Doubleback discriminated against him because he is black. Jackson brings this claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e et seq., and 42 U.S.C. § 1981. Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Section 1981 "protects an individual's right to be free from racial discrimination in the 'making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" Brown v. Progress Energy, 364 Fed. Appx. 556, 557 n.1 (11th Cir. 2010) (quoting 42 U.S.C. § 1981). "The elements to establish an employment discrimination claim under § 1981 . . . are the same as those required under Title VII." Knight v. Fourteen D Enterprises, Inc., 995 F.

Supp. 2d 1311, 1323 (S.D. Ala. 2014) (quoting Porter v. Am. Cast Iron Pipe Co., 427 Fed. Appx. 734, 736 (11th Cir. 2011)).

Jackson identifies two instances in which he alleges Doubleback discriminated against him on the basis of race: (1) the written reprimands he received and (2) his termination. Because Jackson has not identified any direct evidence of discrimination,[10] his remaining alternative is to support his allegation via circumstantial evidence. To do so, he must demonstrate that: (1) he was a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action; and (4) employees outside his protected class were treated favorably. Holland v. Gee, 677 F.3d 1047, 1055 (11th Cir. 2012) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

Doubleback does not deny that Jackson belongs to a protected class or that he was subjected to an adverse employment action when Jackson was terminated. (Doubleback does not address whether the written reprimands constitute adverse employment actions.) Regardless, Jackson has failed to establish a prima facie case because he has not demonstrated that he was treated less favorably than similarly situated individuals outside his protected class. Although he has alleged that white comparators did not receive reprimands for the same or similar conduct that he did, Jackson has not supported this contention with acceptable and admissible factual evidence.[11]

---

[10] The Eleventh Circuit in Wilson v. B/E Aerospace, Inc. explained that "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination" and that direct evidence is "evidence that, if believed, proves [the] existence of [a] fact in issue without inference or presumption." 376 F.3d 1079, 1086 (11th Cir. 2004) (citations and internal quotations omitted).

[11] "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996). Moreover, Jackson's motion is not sworn so the Court is unable to consider the facts alleged therein as evidence.

Even assuming Jackson demonstrated a <u>prima facie</u> case for race discrimination, Doubleback has offered legitimate, nondiscriminatory reasons for the employment actions. These reasons included Jackson's (1) conduct outlined in the written reprimands; (2) change in demeanor following his refusal to sign the reprimand; (3) walking off the job after the May 22 incident, and (4) refusal to perform a job request. Jackson has not shown that these reasons are pretext or that his termination was based on his race. As a result, summary judgment is **DENIED**.

### b. Hostile Work Environment[12]

"A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Miller v. Kenworth of Dothan, Inc.,</u> 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting <u>Harris v. Forklift Systems, Inc.,</u> 510 U.S. 17, 21 (1993)). To establish a hostile work environment claim in the Eleventh Circuit, a plaintiff must show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

<u>Id.</u> With respect to the fourth factor (i.e., that the harassment was severe and pervasive), the Eleventh Circuit has explained that it

---

[12] To the extent Jackson argues his hostile work environment emanated from his engagement in protected activity, summary judgment would be denied because he has not demonstrated the complained-of reprimands occurred *after* he engaged in protected activity. "To prevail on her retaliatory hostile work environment claim, Plaintiff must show that: (1) she engaged in protected activity, (2) *after doing so, she was subjected to unwelcome harassment,* (3) her protected activity was a "but for" cause of the harassment, and (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment." <u>Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs,</u> 616 F. App'x 899, 904 (11th Cir. 2015) (citing <u>Gowski v. Peake, 682 F.3d 1299, 1311–12 (11th Cir. 2012)</u>) (emphasis added).

contains an objective and a subjective component. Miller, 277 F.3d at 1276. "Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] ... to be abusive." Id. (internal quotation marks omitted). In evaluating the objective severity of the harassment, this court looks at the totality of the circumstances and considers, among other things: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." Harris, 510 U.S. at 23, 114 S.Ct. 367.

Gowski v. Peake, 682 F.3d 1299, 1312 (11th Cir. 2012).

Doubleback does not contend that Jackson fails to establish that he satisfies the subjective component. Instead, it argues that Jackson's receipt of written reprimands does not constitute a hostile work environment. (Doc. 49 at 5). Therefore, the Court considers whether the complained-of conduct satisfies the objective component.

"As opposed to '[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire,' a hostile work environment claim addresses acts 'different in kind' whose 'very nature involves repeated conduct,' such as 'discriminatory intimidation, ridicule, and insult.'" McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114–16 (2002)). Some courts have concluded that infrequent reprimands, such as the two at issue in this case, do not create an objectively severe or pervasive hostile work environment. See Kelly v. Dun & Bradstreet, Inc., 2014 WL 12691596, at *5 (N.D. Ga. Sept. 12, 2014), report and recommendation adopted, 2015 WL 13322124 (N.D. Ga. Mar. 30, 2015), aff'd, 641 Fed. Appx. 922 (11th Cir. 2016) (unpublished) (citing Aristyld v. City of Lauderhill, 543 Fed.Appx. 905, 909 (11th Cir. 2013), for the proposition "that reprimands and isolated comments did not rise to the level necessary to support retaliatory hostile work environment"). They cannot "form the basis[,]" Gowski, 682 F.d at 1312 (emphasis removed), of a hostile work environment claim but they can be considered by the jury as part of a hostile work environment claim. Id. at

1313 ("[T]he jury could *consider* discrete acts as part of a hostile work environment claim.") (emphasis in original).

Jackson points to the written reprimands as evidence of the hostile work environment. (Doc. 34 at 3–4). These reprimands appear to comprise the majority of the actions that form the allegedly hostile work environment. But his amended complaint also takes issue with other perceived slights, such as Pilkington's insistence that Jackson sign the written reprimand, that Jackson was required to turn in his tickets daily, and that he was not able to drive other company vehicles. (Id. at 5). These series of incidents centered upon a three- or four-week period. Once the reprimands are excluded from the basis, it is clear that Jackson has not demonstrated, based on undisputed evidence, that his claim satisfies the objective component. First, the perceived slights occurred during a relatively brief time period—approximately one month or less. Second, the complained-of events did not frequently occur. Pilkington tried to force Jackson to sign the written reprimand twice. It is unclear how often Jackson was denied permission to drive the truck, but Jackson has not submitted evidence that it occurred with regularity. Finally, Jackson has not pointed to evidence that the conduct unreasonably interfered with his job performance. Jackson has therefore not established that the conduct was objectively severe. Miller, 277 F.3d at 1276. And most important, Jackson has wholly failed to establish that any of the complained-of conduct was directed at him because of his race or because he engaged in protected activity. Accordingly, Jackson is not due to judgment as a matter of law on his hostile work environment claim. His motion for summary judgment with respect to this claim is **DENIED**.

### c. Retaliation

Employers are prohibited from "discriminat[ing] against any of [its] employees or applicants for employment . . . because he has opposed any practice made an unlawful employment

practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Put plainly, Title VII bars employers from retaliating against an employee who has reported discrimination. See id.

In the absence of direct evidence of discrimination,[13] to demonstrate a prima facie case for retaliation, the plaintiff must establish: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the two. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010). Upon doing so, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory justification for the adverse employment action. Id. (quoting Bryant v. Jones, 575 F.3d 1281, 1307–08 (11th Cir. 2009)). If the employer succeeds, the plaintiff has the opportunity to show the proffered reasons are pretext. Id.

Jackson's motion for summary judgment with respect to his retaliation claim fails for two reasons. First, Jackson has failed to establish a prima facie case for retaliation because he has not established as a matter of law a causal connection between his EEOC Charge and his termination. And second, even assuming Jackson did establish a prima facie claim of retaliation, Jackson has failed to rebut the reasons Doubleback offered for his termination.

In this case, Jackson engaged in a protected activity by filing an EEOC Charge. (If Jackson contends he engaged in or opposed other protected activities outlined in 42 U.S.C. § 2000e–3(a), he has not directed the Court to evidence of that activity.)[14] Also, Jackson suffered an adverse

---

[13] Jackson has not argued direct evidence of retaliation exists such that the Court should forgo the McDonnell Douglas analysis.

[14] Jackson references an OSHA complaint in his motion, (Doc. 42 at 7), however he has presented no evidence of his complaint. Nevertheless, "under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'"Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997) (quoting 42 U.S.C. § 2000e-3(a)). Reporting

employment action when Doubleback terminated him pursuant to a letter dated May 24, 2017. (Doc. 49-1 at 10). Padron v. BellSouth Telecomm., Inc., 196 F. Supp. 2d 1250, 1256 (S.D. Fla. 2002), aff'd sub nom. Padron v. Bellsouth, 62 Fed. Appx. 317 (11th Cir. 2003) ("It is undisputed that Plaintiff was fired and that termination is an 'adverse employment action.'"). The sole question, therefore, centers upon element three; that is, whether a causal connection exists between Jackson's protected activity and the adverse employment action he suffered.

"To establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct[] . . . .'" Kidd v. Mando American Corp, 731 F.3d 1196, 1210 (11th Cir. 2013) (quoting Shannon v. Bellsouth Telecommunications, Inc., 292 F.3d 712, 716 (11th Cir. 2002)). In this case, Jackson has not provided any evidence that Doubleback or Pilkington knew that he had filed an EEOC Charge. Quigg v. Thomas County Sch. Dist., 814 F.3d 1227, 1245 (11th Cir. 2016) ("Without any knowledge [by the employer] that [the plaintiff] engaged in protected activity, [the plaintiff] cannot show that the activity caused the adverse [action].");
Shufeng Zhou v. Genshaft, 2019 WL 1643230, at *6 (M.D. Fla. Apr. 16, 2019) ("To establish the requisite causal connection, the plaintiff must, at a minimum, show that the decisionmaker was aware of his protected conduct . . . ."). The date he affixed to his EEOC Charge of Discrimination is April 23, 2017, but the date stamped "received" by the EEOC Mobile Office staff is May 23, 2017. (Doc. 42-4 at 1). A reasonable inference to be drawn from the one-day difference between when the EEOC dated Jackson's Charge as "received" and his termination is that Pilkington and Doubleback were oblivious to his Charge when it sent Jackson the termination letter.

---

an OSHA violation is not protected activity under Title VII. Washington v. M. Hanna Construction Inc., 299 Fed. Appx. 399, 401 (5th Cir. 2008) ("Because Title VII does not encompass violations of OSHA . . ., Plaintiff's alleged reporting of [employer] to authorities for violating OSHA does not qualify as protected activity under Title VII . . . .").

In addition, even if Jackson successfully demonstrated a prima facie case of retaliation, he has not demonstrated that the reasons Doubleback provided for his termination are pretextual. Pilkington offered a litany of reasons for terminating Jackson. These reasons included Jackson's (1) conduct outlined in the written reprimands; (2) change in demeanor following his refusal to sign the reprimand; (3) walking off the job after the May 22 incident, and (4) refusal to perform a job request. Jackson has not demonstrated that these reasons are pretextual.[15]

Jackson has not demonstrated that he is entitled to judgment as a matter of law, and summary judgment on his retaliation claim is accordingly **DENIED**.

### d. Failure to Adequately Train

Jackson seems to allege two distinct prongs within this claim. The first appears to be that he was discriminated against based on his race because he was not given additional training before he was terminated. See (Doc. 34 at 2 ("No further training was given to Plaintiff after the 2 (two) weeks expired . . . ."); id. at 5 ("The court expect[s] documentation in the form of training sessions on policies and procedures, written warning and counseling sessions before adverse employment action is taken.")). Jackson's claim fails because he has not established that other employees outside his protected class were treated more favorably when Doubleback was confronted with similar behavior.

The second appears to be that Doubleback failed to properly train other employees who allegedly discriminated against him. (Doc. 34-1 at 3 ("There [were not any] training orientation or policies concerning discrimination, hostile work environment, or termination/discharge.")). For instance, he takes issue with Doubleback's failure to create an Hourly Employee Handbook

---

[15] "If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007).

regarding a Non-Discrimination Policy and an Anti-Harassment Policy. (Doc. 34 at 6). He further alleges that Doubleback did not maintain a policy for how an employee should report harassment. (Id. at 5). Jackson also argues that Evergreen Forest Products is liable for the harassment at Doubleback because "Evergreen Forest[] Products knew (actual notice) or should have known (constructive notice) of the harassing conduct but failed to take prompt remedial action." (Id. at 6).

It appears that Jackson conflates an affirmative defense for a hostile work environment claim with a claim for workplace discrimination.[16] "Even if the harassment is severe and pervasive enough to result in a hostile work environment, an employer can avoid liability for that hostile work environment by maintaining an effective policy against harassment." Garrett v. Tyco Fire Products, LP, 301 F. Supp. 3d 1099, 1121 (N.D. Ala. 2018). An employer may avail itself of the affirmative defense by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807. Because it is an affirmative defense, the employer bears the burden of establishing both elements. Garrett, 301 F. Supp. 3d at 1121.

Doubleback argues that Jackson's failure to adequately train claim does "not set forth any facts or circumstances that give rise to a viable and recognizable claim under [f]ederal [l]aw." (Doc. 49 at 5). The Court agrees. Accordingly, summary judgment with respect to this claim is due to be **DENIED**.

---

[16] This assumption is buttressed by Jackson's cite to Baldwin vs. Blue Cross/ Blue Shield of Ala., 480 F.3d 1287, 1305 (11th Cir. 2007), a case that addressed the affirmative defenses outlined in Faragher v. City of Boca Raton, 524 U.S. 775 (1998), and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

## V. <u>DOUBLEBACK'S "MOTION"</u>

Doubleback did not timely move for summary judgment. <u>See</u> (Doc. 27 (Scheduling Order) at 5 (setting dispositive motion deadline as March 15, 2019)). Instead, as a heading in its response to Jackson's converted motion, it argued it was "entitled to summary judgment on its affirmative defense of failure to state a claim upon which relief can be granted pursuant to the affidavit and documentary evidence attached to this response hereto." (Doc. 49 at 3). <u>Id.</u> at 5 ("[S]ummary judgment should be entered in favor of the Defendant pursuant to its affirmative defense of failure to state a claim upon which relief can be granted."). Requesting summary judgment in a response brief is not appropriate under the Federal Rules of Civil Procedure or this Court's local rules. <u>E.g.</u>, <u>Hartford Fire Ins. Co. v. Trynex, Inc.</u>, 2013 WL 12183610, at *1 (E.D. Mich. July 25, 2013) (striking request for summary judgment in response brief); <u>Natl. Exch. Bank and Tr. v. Petro-Chem. Sys., Inc.</u>, 2013 WL 1858621, at *3 (E.D. Wis. May 1, 2013) ("A passing reference to a request for summary judgment in a response brief is not itself a motion for summary judgment."). Doubleback's counsel is **DIRECTED** to read the Federal Rules of Civil Procedure regarding summary judgment motions prior to any future practice in this Court.[17]

## VI. <u>CONCLUSION</u>

In the final analysis, Jackson's motion simply does not demonstrate that he is entitled to judgment as a matter of law on any of his claims. For the forgoing reasons, Jackson's converted motion for summary judgment (Doc. 42) is **DENIED**.

Rule 56(f)(1) permits a court to grant summary judgment for a nonmovement after giving notice and a reasonable chance to respond. <u>See</u> <u>Jones v. Fulton Cty., Ga., 446 F. App'x 187, 189</u> (11th Cir. 2011) ("a district court has the power to enter summary judgment *sua sponte*[]");

---

[17] The Court notes that Doubleback's previous Motion to Dismiss was stricken for failure to provide, as required by the local rules, a brief which cited legal authority for the motion. <u>See</u> (Doc. 18).

*Philadelphia Indem. Ins. Co. v. Intrepid Grp., LLC*, 2018 WL 1517199, at *5 (S.D.N.Y. Mar. 26, 2018), *reconsideration denied,* 2018 WL 2247205 (S.D.N.Y. May 15, 2018) (stating the rule "permits a court to grant summary judgment in favor of a non-movant so long as the party against whom judgment is entered has been provided with notice and a reasonable time to respond."). One court described Rule 56(f)(1) as "exist[ing] largely for the convenience of the court, to save it from proceeding with trials that it can readily see are unnecessary." *Natl. Exch. Bank and Tr.,* 2013 WL 1858621, at *1.   This appears to be such a case.

Accordingly, this Order provides Jackson with "advance notice[,]" *Gentry v. Harborage Cottages-Stuart, LLLP,* 654 F.3d 1247, 1261 (11th Cir. 2011), that the Court believes summary judgment in favor of Doubleback may be appropriate in this case, given the above discussion. First, Jackson's motion failed to outline, establish, and satisfy essential elements of his claims. Second, even, as outlined above where applicable, when the Court assumed for the sake of argument that Jackson had demonstrated a *prima facie* case, he did not rebut Doubleback's reasons as pretext. Accordingly, and pursuant to Rule 56(f)(1), Jackson shall be afforded an opportunity to respond to this Order on or before **May 28, 2019**.

The Clerk shall forward a copy of this Order to Jackson.

**DONE** the 6th day of May 2019.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**