IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RONALD JACKSON,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    CIVIL ACTION: 1:17-00386-KD-B<br>) |
| DOUBLEBACK TRANSPORTATION,<br>    Defendant. | )<br>)<br>) |

### ORDER ENTERING SUMMARY JUDGMENT IN DEFENDANT'S FAVOR

In an Order dated May 6, 2019, this Court notified pro se Plaintiff Ronald Jackson that, based on the evidence submitted during his motion for summary judgment, it believed this case merited sue sponte summary judgment in favor of Defendant Doubleback Transportation, LLC.[1] (Doc. 52). Doubleback did not move for summary judgment. However, Federal Rule of Civil Procedure 56(f)(1) permits the Court to grant summary judgment for a nonmovant.[2] Rule 56(f)(1) serves as a convenient method by which courts may dispose of a case without proceeding to an "unnecessary trial[,]" 10A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 2720.1 (4th ed. 2008), so long as it provides "notice and a reasonable time to respond[.]" FED. R. CIV. P. 56(f). The May 6 Order provided the requisite notice. (See Doc. 52 at 16). And importantly, in this case, all claims "have been fully developed in the evidentiary record . . . ."[3] Artistic Ent., Inc. v. City of Warner Robins, 331 F.3d 1196, 1202 (11th Cir. 2003). Jackson therefore had the opportunity to develop and marshal the evidence necessary to support and sustain his claims.

---

[1] The Court is mindful that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).
[2] See Jones v. Fulton Cty., Ga., 446 F. App'x 187, 189 (11th Cir. 2011) ("[A] district court has the power to enter summary judgment sua sponte.").
[3] Pursuant to the Rule 16(b) Scheduling Order, the discovery completion deadline was February 15, 2019.

1

The May 6 Order outlined elements of Jackson's claims that a plaintiff in the Eleventh Circuit must satisfy in order to withstand summary judgment. Moreover, the May 6 Order gave Jackson three weeks within which to supplement the record and persuade the Court—already familiar with the facts of this case—that its belief was in error. Unpersuaded, the Court now sua sponte grants summary judgment in Doubleback's favor.

I. **PROCEDURAL BACKGROUND**

The Court provided a more complete procedural background in the May 6 Order. For present purposes, the Court provides the following background. Jackson filed an amended complaint after the Court afforded him the opportunity. (Doc. 34). As amended, the complaint alleged the following claims:

a. Workplace Discrimination on the Basis of Race

b. Hostile Work Environment on the Basis of Race and in Retaliation

c. Retaliation

d. Failure to Adequately Train

See (Doc. 42 at 1 ("The Plaintiff is pursuing claims against Double Back Transportation for hostile work environment, termination/discharge in regards to same or similiar [sic] under Section 1981 and Title VII and failure to adequately train."); see also Doc. 34-1 at 7 ("The [n]egative appraisal occu[r]red after protected activity on April 11, 2017, Plaintiff was subjected to adverse activity.")).

Jackson then filed a motion for judgment on the pleadings. (Doc. 42). The Court converted his motion into a motion for summary judgment because it implicated factual issues. The Court afforded Jackson time within which to supplement his motion and entered a briefing schedule for a response to Jackson's motion for summary judgment. (Docs. 43 & 44). Thereafter, the Court issued an order notifying Jackson that, having reviewed the evidence, the Court believed summary

judgment may be due to Doubleback, a nonmovant. Jackson has now responded in a 20-page brief, to which 67 pages of exhibits were attached. See (Doc. 53).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Id. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter . . . the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992) (internal citations and quotations omitted).

## III. MATERIAL FACTS

Doubleback hired Jackson as a part-time driver in January 2017. (Doc. 49-1 at 1). During his employment, Jackson worked on an as-needed basis. (Id.). Becky Pilkington, who served during the relevant period as Doubleback's general manager, gave Jackson verbal reprimands. (Id.).

In a span of three days in April, Pilkington received three unrelated complaints about Jackson. (Id.). In response to these complaints, he was given a written reprimand. (Id.; doc. 49-2) The three incidents initially listed on the written reprimand were: (1) 4/11/17: Tailgate left open on a truck; (2) 4/13/17: Jackson took the wrong trailer; and (3) 4/14/17: Anonymous call that Jackson was driving recklessly. (Doc. 49-2). The second incident was stricken from the reprimand.

3

(Id.). The reprimand indicated that any other incidents that required disciplinary action would result in suspension of employment. (Doc. 42-3). Jackson refused to sign the written reprimand—twice. (Doc. 49-1 at 1). According to Pilkington, Jackson's demeanor changed after he received a written reprimand. (Id.). He arrived late, ineffectively communicated, and walked off the job on May 22, following an incident ("the May 22 incident"). (Id.).

The May 22 incident revolved around Jackson's allegations that a truck, Truck 57, was unsafe to drive due to the truck shaking. (Doc. 49-3). According to Pilkington, Jackson claimed that Truck 57 was unsafe because the front shook and its cruise control did not work properly. (Doc. 49-1 at 2). Jackson had driven Truck 57 on the previous three days, and had not reported any issues with the truck during those days. (Id.).

Pilkington asked Doubleback's Safety Manager, Daron Bolen, to address the problems. (Doc. 49-3 at 1). An inspection revealed that the front tire had uneven tread, which would have caused the shaking. (Id.). The tire was replaced, the truck was test driven, and it was determined to be safe. (Id.). Bolen also determined that the defective cruise control did not render the vehicle inoperable pursuant to the Department of Transportation's requirements. (Id.). Although Jackson was informed that the truck was fixed, he refused to drive it. (Id.).[4] Another driver replaced him, and the replacement driver drove Truck 57 without incident. (Id.).

Jackson did not report for work on May 24, 2017. Jackson called in sick an hour after he was scheduled to arrive. As a result of the incidents described in the written reprimand, subsequent workplace conduct, Jackson walking off the job following the May 22 incident, and his refusal to

---

[4] Jackson states in his motion that he was told by another employee that the truck was in danger of catching on fire. However, Jackson's statement as to what another employee stated is inadmissible hearsay.

drive Truck 57, Pilkington determined that Jackson's employment should be terminated. (Doc. 49-1 at 2). Doubleback terminated Jackson in a written letter dated May 24, 2017. (Doc. 49-1 at 10).[5]

Jackson dated an EEOC Charge of Discrimination (EEOC Charge No. 846-2017-21475) as April 23, 2017. (Doc. 42-4 at 1).[6] On his Charge, he checked race as the basis upon which Doubleback discriminated against him. (Id.). The alleged discrimination is based on the receipt of the written reprimand dated April 19, 2017. The EEOC dated this Charge as received on May 23, 2017. (Id.). On June 20, 2017, the EEOC issued a right to sue letter on the first charge of discrimination (EEOC Charge No. 846-2017-21475). (Doc. 42-6). In the letter, the EEOC notified Jackson that it was unable to conclude that the information obtained established violations of the statutes. (Id.).

Jackson filed a second EEOC Charge which alleged that between May 3 and May 24, 2017, Doubleback engaged in retaliation and discrimination against him. See (Doc. 34-10 (Notice of Charge of Discrimination) (EEOC Charge No. 425-2017-00656); Doc. 16 at 9). On June 29, 2017, the EEOC issued a right to sue letter on this charge. (Id. at 10).

## IV. DISCUSSION

### A. Workplace Discrimination and Hostile Work Environment

Jackson's response centers primarily on two alleged incidents, other than his termination, wherein he feels he encountered unlawful discrimination. The first involves the use of a company vehicle. Jackson contends that he was "banned" from using the vehicle while a white employee (Blake Sheffield) was allowed to use the vehicle. (Doc. 53 at 8, ¶ 22). The next incident involves an employee named Clara Powell. Jackson contends that she was allowed to submit her paperwork late, although he was not allowed to do so. (Doc. 53 at 9, ¶ 6).

---

[5] Jackson received the letter on May 26, 2017. (Doc. 42 at 5).
[6] In Jackson's second charge he alleges that he filed his first charge on or about May 23, 2017. (Doc. 16 at 9).

5

Neither incident rises to level of a Title VII claim of discrimination because Jackson has failed to show how they affected his working conditions. "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001). To constitute an adverse employment action and therefore support a Title VII discrimination claim, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." Id. at 1239. Neither the deprival of use of the employee vehicle nor the requirement that Jackson timely submit his paperwork satisfies that standard. The claims therefore fail as a matter of law. See Collado v. United Parcel Service, Co., 419 F.3d 1143, 1150 (11th Cir. 2005) ("[I]f a plaintiff fails to establish a prima facie case, the defendant is entitled to judgment as a matter of law . . . ."). Moreover, neither of these incidents formed the basis of the reprimands Jackson received, nor are they the bases for his termination.

Nor were these incidents, even considered along with the incidents detailed in the written reprimand, sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily hostile working environment. Accordingly, as a matter of law Jackson cannot show a hostile work environment based on his race.

Ultimately, Jackson was fired based on the reprimands he received and his refusal to drive a truck that he deemed unsafe. Jackson offers no evidence (or, for that matter, argument) that his termination was based on his race. Indeed, the reasons for his termination become clearer in his response to the Court's May 6 Order: Jackson specifically acknowledges that "the reason for [his] termination has always been addressed for raising safety concerns about truck #57." (Doc. 53 at 5). Jackson takes issue with whether the reprimands were justified, but agrees that he was fired because he would not drive a truck he considered dangerous. (Doc. 53 at 5 ("Plaintiff has never

alleged that his termination was for two different reasons; the reason for my termination has always been addressed for raising safety concerns about truck #57.")).

Jackson has contended, in an ongoing administrative proceeding before the Department of Labor, that Doubleback violated the Surface Transportation Assistance Act ("STAA") when it terminated Jackson because he refused to drive what he considered an unsafe truck. See (Doc. 53-14 at 1–3 (letter from an Occupational Safety and Health Administration's ("OSHA") Regional Supervisory Investigator describing Jackson's allegations under the STAA)). It is this Court's understanding—based on Jackson's representations and attached exhibits—that the administrative proceeding is ongoing. However, in Jackson's response, he attempts to graft the issue implicated in those proceedings onto this cause of action.

The STAA prohibits the discharge of an employee who "refuses to operate a vehicle because . . . the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security . . . ." 49 U.S.C. § 31105(a)(1)(B)(i). "An employee who alleges that he was discharged in violation of the anti-retaliation provision in the STAA can file a complaint with [OSHA.]" Yusim v. Dept. of Lab., 645 Fed. Appx. 967, 968 (11th Cir. 2016). And a district court may conduct a de novo review of such a complaint only if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the employee's bad faith. 49 U.S.C. § 31105(c). See Rose v. Anderson Hay and Grain Co., 2010 WL 3211948, at *1 (E.D. Wash. Aug. 6, 2010) ("Congress granted district courts subject-matter jurisdiction in 49 U.S.C. § 31105 only in cases in which the Secretary of Labor fails to issue a final decision within 210 days after the filing of the complaint with the Secretary of Labor and the delay is not due to the employee's bad faith."). In this case, Jackson's STAA complaint was filed, according to the Secretary of Labor's Notice, on August 23, 2017.

(Doc. 53-14 at 1). Jackson filed this action in federal court on August 25, 2017, much sooner than 210 days after filing the OSHA complaint. The Secretary of Labor issued its findings in a letter dated August 29, 2018, more than 210 days after filing of the complaint. Even if the Secretary's delay ultimately gave rise to this Court's jurisdiction over Jackson's STAA claims, Jackson's amended complaint did not allege, as a cause of action, that he was discriminated against pursuant to STAA. In fact, he explicitly invoked two entirely different provisions. (Doc. 35 (Jackson's Amended Complaint) at 1 ("Plaintiff now represents he is pursuing claims against Double Back Transportation [sic] for hostile work environment and discrimination on the basis of race in regards to same or similar under *Section 1981 and Title VII*.") (emphasis added)).

Moreover, Jackson is continuing to litigate his claim before the Secretary of Labor. Accordingly, this Court is without jurisdiction to address his claims as they relate to retaliation the STAA prohibits.

### B. Retaliation

42 U.S.C. § 2000e-3 prohibits employers from "discriminat[ing] against any of [its] employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). As explained in the May 6 Order, Jackson has failed to show he engaged in any protected activity, other than the filing of an EEOC complaint on May 23, 2017. This activity occurred after all of the incidents that Jackson labels retaliatory. Accordingly, Jackson is unable to establish a prima facie case of retaliation.

### C. Failure to Train

Jackson repeats his failure to train claim in his response. See (Doc. 53 at 16–17). Specifically, he argues that the lack of training was discriminatory. He further urges the Court to consider the fact that Doubleback took adverse employment action prior to training him and providing him with "written warning[s] and counseling sessions[.]" (Doc. 53 at 17, ¶ d). As the Court explained in the May 6 Order, however, neither of his theories for failure to train rises to the level actionable under employment discrimination law. In fact, the Fifth Circuit has explicitly held that "a refusal to train is not an adverse employment action under Title VII." Hollimon v. Potter, 365 Fed. Appx. 546, 549 (5th Cir. 2010) (citing Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 406–07 (5th Cir. 1999)). Although Jackson claims that Doubleback's failure to produce documentation of training sessions and internal policies entitles him to now rebut the reasons for the allegedly adverse employment action as pretextual, Jackson must first meet his prima facie burden. Because failure to train is not an adverse employment action, he has not done so. Even assuming Jackson's failure to train claim did constitute impermissible conduct under Title VII, Jackson has not alleged others outside his protected class received training and were therefore treated more favorably, as this Court previously noted in the May 6 Order. See (Doc. 53 at 13).

**V.    CONCLUSION**

For the reasons set forth both in this Order and the May 6 Order, the Court finds that summary judgment is due to be entered in Doubleback's favor. In accordance with the foregoing, summary judgment is entered in favor of Defendant Doubleback Transportation, LLC and against Plaintiff Ronald Jackson. Judgment pursuant Federal Rule of Civil Procedure 58 will issue separately. The pretrial conference—currently set for June 13, 2019—is **CANCELLED**.

The Clerk is **directed** to forward a copy of this Order to Jackson.

**DONE** the 5th day of June 2019.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**